| 58 | 485 |
| 59 | 224 |
| 59 | 621 |

| 58 | 485 |
| e61 | 777 |
| f61 | 778 |

## J. S. Peak v. The Lenora State Bank.
### No. 10660.

Homestead Exemption — *may be claimed by selecting parts of several tracts contiguous to debtor's residence.and to each other; and notwithstanding erroneous claim made, the court on motion to set aside sale should permit debtor to select.* A homestead claimant owning more than 160 acres of land, who attempts, under the statute (section 2, chapter 38 [¶ 2997], General Statutes of 1889), to select as his exemption 160 acres upon which he does not reside, but a portion of which is connected by contiguous tracts with the one upon which he does reside, is not to be denied an exemption in such portion as is thus connected merely because he omits to claim it in connection with the tract upon which he lives; and, in such case, on a motion by him to vacate a sheriff's sale of the land claimed as exempt, the court should put him to his election between such parts of the claimed land as can be so connected with the tract upon which his dwelling house is situated, and should sustain his motion to vacate as to the portion selected.

Error from the Court of Appeals, Northern Department. Opinion filed July 10, 1897. *Reversed.*

*L. H. Thompson,* for plaintiff in error.

*J. R. Hamilton & Son* and *L. H. Wilder,* for defendant in error.

Doster, C. J. This case involves questions of homestead exemption and selection. September 28, 1892, the Lenora State Bank, defendant in error, recovered a money judgment against J. S. Peak, plaintiff in error, in the District Court of Norton County. At that time, and until after the levy of execution hereafter mentioned, plaintiff in error was the owner of a number of contiguous tracts of land, amounting to 760 acres, of which the land in question was a part. These lands embraced the northeast and southwest quarters of section seventeen, and the northeast quarter, and the north half of the southeast quarter, of sec-

tion twenty, all in township five, range twenty-four, west; being a contiguous body of tracts one mile and three-quarters in length from north to south, and one-half mile in width. All the lands owned by Mr. Peak were mortgaged. January 9, 1894, the defendant in error caused execution to be issued on its judgment and levied upon the northeast quarter of section seventeen, and the south half of the northeast quarter and the north half of the southeast quarter of section twenty. The intervening tracts, the southeast quarter of section seventeen and the north half of the northeast quarter of section twenty, were not levied upon. January 30, 1894, the plaintiff in error, in pursuance of the law relating to exemptions (Gen. Stat. 1889, ¶ 2997), served written notice upon the sheriff making the levy that he claimed the south half of the northeast quarter, and the north half of the southeast quarter, of section twenty, as his homestead. This notice was disregarded; and, on February 10, following, the lands levied upon were sold. The defendant in error, as judgment creditor, became the purchaser. At the succeeding term of court, the plaintiff in error moved to set aside the sale of the lands claimed to be exempt. Upon the hearing of this motion, the court vacated the sale, upon the claim of homestead exemption, and from the order of vacation the Bank prosecuted error to the Court of Appeals. Upon consideration of the case by that court, the order setting aside the sale was reversed. *Lenora State Bank v. Peak*, 3 Kan. App. 698. From that order of reversal, the plaintiff in error, Peak, in turn prosecutes error to this court.

The evidence in the case, which was almost entirely that of the plaintiff in error, and which in one or two particulars is somewhat lacking in clearness and precision of statement, shows that, in 1873, the plaintiff

in error settled upon and entered the lands now claimed by him as a homestead, under the pre-emption laws of the United States. This tract is the most valuable and the best adapted to farming purposes of all the lands owned by him; having thereon a stream of water and a considerable body of timber. It is fenced, and has about seventy acres broken to cultivation. After residing upon such tract for about three years, the plaintiff in error entered under the homestead laws of the United States the neighboring tract, the southeast quarter of section seventeen, a quarter of a mile distant from his pre-emption claim; and, after making final proof of five years' residence, continued to reside upon it until the latter part of September, 1893, about one year after the recovery of the judgment in question.

During the period of his residence upon this last-mentioned tract, he built a stone house, and made other improvements thereon, at a cost of about two thousand dollars. He, however, always claimed the lands in section twenty as his homestead; or, as he denominated it at one point in his testimony, his "regular home." He always intended to sell the land upon which he resided, if he could do so, and move back on the lands in section twenty. However, after becoming financially embarrassed, he offered to sell the tract claimed as a homestead, for the purpose of enabling him to pay his indebtedness; but failing to secure the price asked, did not do so. To quote his testimony in one particular: " I expected to save some property to shelter me, but if I had to come down to one piece of land I always intended to hold that piece of land in twenty." At the time of the creation of the indebtedness to the Bank, upon which the judgment in question was rendered, he told the managing bank-officials that he claimed the land in

section twenty as his homestead ; that he intended to make that his home ; that he thought more of it than he did of the rest of his land, and intended to keep it as a home, and not part with it if he could help himself. At what time a definitely formed intention to abandon his residence in section seventeen and occupy the claimed homestead in section twenty arose in his mind, does not appear ; inferentially, not until after the recovery against him of the judgment in question, and the perception by him of the fact that he could not discharge his indebtedness, so as to hold more than his constitutional exemption of 160 acres.

September 28 or 29, 1893, with his family, consisting of his wife and father-in-law, a very aged and infirm old man, he moved out of the stone building on section seventeen into a cheap, illy constructed house on the claimed homestead in section twenty ; leaving, however, part of his household furniture in the vacated building. As the cold weather of the succeeding winter came on, he went back into the stone house on section seventeen, on account of the inability of his wife's father to live in the poor and illy constructed building on section twenty. They remained in the old home until after the sale in question ; moving back upon the claimed homestead only a few days before the hearing of the motion to set aside the sale. In the meantime, however, an additional building costing about sixty dollars had been erected on the land in section twenty. The removal from one place to another was made under the advice of counsel, and to save the land as a homestead. Upon this state of facts, the question arises whether the claim of homestead exemption of the land in section twenty can be sustained.

Our judgment is, that the legal principles forming the basis of the decision of the Court of Appeals, and

much of its reasoning in elucidation of the same, are sound; but that, while plaintiff in error was not entitled to all the land claimed by him as a homestead, he was entitled to a portion of it; and that opportunity should have been given the District Court to set it off to him.

The vaguely formed, indefinite, and conditional intention of the plaintiff in error to occupy the claimed homestead, cannot avail to impart to it the homestead character, in the face of his long-continued residence elsewhere. The homestead character must attach to land before it becomes impressed with a judgment lien. *Bullene v. Hiatt*, 12 Kan. 98; *Ashton v. Ingle*, 20 id. 670. A homestead can only exist in a single tract or contiguous tracts. *Randal v. Elder*, 12 Kan. 257; *Linn Co. Bank v. Hopkins*, 47 id. 580.

The dwelling house upon the homestead is an inseparable part of it. There can be no homestead without a place of family-dwelling, either actual, or in such contemplation as amounts to the same thing. The dwelling house is the nucleus of all the homestead interests and affections, and hence whatever homestead selection is made must include the family roof-tree. We do not know that this has been specifically remarked in any of the decisions, but it results as a principle from the nature of the homestead exemption, and is implied in all the cases. Hence, the plaintiff in error was not entitled to make a homestead selection which did not include the house in which he lived. He was entitled, however, to select a homestead of such contiguous tracts as would include the one upon which he resided. He lived upon the south half of the southeast quarter of section seventeen. The north half of the northeast quarter of section twenty, one fourth of a mile in width, intervenes between that and the claimed homestead. At the time of the levy

by the sheriff and the attempted homestead selection, this intervening tract belonged to the plaintiff in error. He could have made a selection to include the forty-acre tract upon which his dwelling house in section seventeen stood, also the forty-acre tract immediately south, in the north half of the northeast quarter of section twenty, and, in addition thereto, eighty acres of contiguous forty-acre tracts out of the one hundred and sixty acres which he did claim. However, he did not do this. He made claim to more than he was entitled to, and in doing so appeared to renounce his claim to what he was entitled to. We think this unwarranted claim in the one particular and renunciation of a valid claim in the other, proceeded from a mistake of his legal rights, which does not justify the courts in refusing to him what he is entitled to. Homestead interests are subjects of special favor by the courts, and claims of homestead exemption are to be liberally viewed. On the hearing of the motion to vacate the sale, the District Court should have put the plaintiff in error to his election between the different tracts composing the homestead selection he had made, and of which he had notified the sheriff, and should have vacated the sale as to the part finally selected; in fact, should have vacated it as to the whole of the tract in question, so as to permit a resale of the remainder.

Of course, we have no knowledge of the complications which may have occurred since the case arose, caused by the shifting of titles to the various tracts out of which the homestead selection might have been made, but we apprehend none have occurred which can operate to prevent the selection of eighty acres out of the larger tract originally claimed as a whole, and its occupancy in a reasonable time hereafter by the homestead claimant.

The judgment of the Court of Appeals is reversed, and likewise that of the District Court, with instructions to such courts to proceed in conformity with this opinion.