No. 28,636.

The Commercial National Bank, *Appellant*, v. W. E. Carnahan et al., *Defendants*; A. C. Sellers, *Appellee.*

(276 Pac. 57.)

Opinion filed April 6, 1929.

*Edwin S. McAnany, Maurice L. Alden, Thomas M. Van Cleave,* all of Kansas City, and *D. F. Stanley,* of Mankato, for the appellant.

No appearance was made for the appellee.

The opinion of the court was delivered by

Hutchison, J.: The only question involved in this appeal is whether the homestead exemption privilege can extend to and embrace two parcels of land cornering on each other.

The defendant owned all of the southeast quarter of section 36 except the southeast 40 thereof, being 120 acres, which went to the center of the section. His residence was on this 120-acre tract. He later purchased the south half of the northwest quarter of the same section, which also cornered in the center of the section. He farmed the entire 200 acres himself. About thirty years ago the defendant obtained oral permission from the owner of the northeast quarter of the section to put in a 16-foot gate in the fence between them at this center corner, that he might go across the extreme corner of the northeast quarter from the 120-acre tract to the 80-acre tract cornering in the center of the section. This privilege was never reduced to writing, but has never been interrupted or de-

nied, although the northeast quarter has changed owners since that privilege was first granted.

The plaintiff bank, after obtaining a personal judgment against the defendant, levied execution upon this 80-acre tract in the northwest quarter of the section and sold it at sheriff's sale. Defendant served notice before the sale of his claim of the east 40 thereof as part of his homestead entitled to be exempt from execution. After the sale the bank moved for confirmation and defendant moved to set aside the sale as to the east 40—the 40 acres touching the center corner. After hearing evidence on the subject the trial court confirmed the sale as to the west 40 and set aside the sale as to the east 40, sustaining the claim of the owner that it was a part of the defendant's homestead. From this ruling the bank appeals.

Appellant urges two points of error in holding this 40-acre tract to be a part of the homestead: First, that two parcels of land that corner on each other cannot be included in the same homestead under the homestead exemption statutes of this state; and, second, that the oral privilege granted by the owner of the northeast quarter to put in a 16-foot gate and drive across the corner of his land to get from one parcel to the other will not so connect the two tracts and make them one as contemplated in the homestead exemption law.

The following is the language of the homestead exemption statute:

"A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law. . . ." (R. S. 60-3501.)

The verbiage is identical with that in the constitution (art. 15, § 9). Another section referring to homesteads, which took effect the same day as the exemption law above quoted, viz., October 31, 1868, is R. S. 22-103, concerning decedent's estates, which is as follows:

"If the intestate at the time of his death owned a greater number of acres of land adjoining his residence than is allowed for a homestead in the preceding section, the widow may select said homestead."

In this last section the word "adjoining" is used, which is not in the other sections.

The first point raised has been completely settled in this state for many years. In the case of *Linn County Bank v. Hopkins*, 47 Kan. 580, 28 Pac. 606, it was said in the syllabus:

"Under the homestead exemption laws of this state, the homestead must consist of one body of land. A person residing upon one 40-acre tract of land and owning a second upon which he does not reside, and which only corners with the first, cannot hold the second 40 exempt as a homestead."

In the opinion emphasis is placed upon the requirement that the homestead must be "occupied as a residence of the family," and that it is impossible to occupy two tracts of land that are not contiguous, touching or adjoining. Reference is made in the opinion to the decision in the case of *Randal v. Elder,* 12 Kan. 257, where it was held that "a homestead, under the homestead exemption laws, must consist of only one tract or body of land." (Syl. ¶ 1.) In that case the homestead claimant had his house on one lot in town and his barn on another, separated by an alley, and had permission to fence in the alley and use both lots and the alley together. The court held the title to the alley was in the county and it made an absolute separation between his two lots, and his exemption rights were limited to the lot on which he resided. We observe the distinction between the separation made by the alley in town and that by a road or highway in the country where the title to the land used for highway belongs to the adjoining landowners. See *Griswold v. Huffaker,* 48 Kan. 374, 29 Pac. 693.

"A debtor who owns and occupies 240 acres of land lying in a body, from whatever source obtained or by whatever title or tenure it is held, is entitled to select 160 acres of the same as his homestead from any of the subdivisions thereof which are contiguous and will include the one upon which he resides." (*Ard v. Pratt,* 61 Kan. 775, syl. ¶ 2, 60 Pac. 1048. See, also, *Peak v. Bank,* 58 Kan. 485, 49 Pac. 613.)

The same general principle was approved in the opinion in a recent case, *State, ex rel., v. Kansas City,* 122 Kan. 311, 252 Pac. 714, where a construction was given to the term "piece of land" in connection with the validity of an ordinance attempting to extend the city limits. In most cases in other states where two separate tracts are permitted to constitute one homestead there is not always as positive a requirement as to its being occupied as a residence, and in some states the limit is prescribed by a maximum value; in others it is sufficient if the separate parcel be used in connection with the resident property. (29 C. J. 830.)

Does the oral privilege of the use of a sixteen-foot gate and driveway across the corner of the neighbor's land change the situation? The thought is that if it is required that the lands be contiguous,

touching and adjacent, then this arrangement with the owner of the northeast quarter will accomplish that purpose and meet that requirement by an actual touching of sixteen feet. It will not be necessary for us to decide what might be the result if the defendant had purchased the wedge-shaped tract in the corner sixteen feet wide and had procured a valid conveyance thereof. All that we have here is an oral permission to use this passageway. It could have been revoked at any time and can now be revoked any day the present owner so desires. It is not a title of any kind; it is not even a lease. It is doubtless included in the homestead of the neighbor, and probably has been so regarded all these thirty years. It may possibly be mortgaged or it might be taken on execution against the real owner. It is at most a license and not capable of forming the connecting link between two otherwise disconnected tracts.

"An easement for a private way is an interest in lands, and cannot be created by a parol grant." (*Insurance Co. v. Haskett,* 64 Kan. 93, syl. ¶ 1, 67 Pac. 446.)

Neither does the long-continued use give title by prescription, because its use was by permission and it lacks the element of adverse possession and use necessary to give title by prescription.

"To obtain an easement for a private way by prescription, the use of such private way must be substantially such a use as, if applied to land, would give title by adverse occupancy. It must have been continuous, exclusive to the extent the nature of the use will permit, and adverse. A use under a mere license will not ripen into an easement by prescription." (*Insurance Co. v. Haskett,* supra, syl. ¶ 2.)

Appellee makes no claim of having paid anything for this license or privilege, and for that reason he has no such right to this privilege as will serve the purposes and requirements of this case. As far as substantial rights are concerned the legal principle is the same whether the privilege granted was as a neighborly act of kindness or for a fraudulent purpose.

"To impress land with a homestead character some real interest or ownership must exist, and a mere gratuitous grantee of one who conveys to defraud his creditors does not acquire any real interest or ownership." (*Kline v. Cowan,* 84 Kan. 772, syl. ¶ 2, 115 Pac. 587.)

Another test to which this license or privilege must be subjected before it reaches the dignity of ownership sufficient to make a substantial connecting link is the exclusiveness of the privilege. There

is nothing in the record to show that the owner was in any way ex-- cluded from the use of it. See *Smyre v. Kiowa County*, 89 Kan. 664, 132 Pac. 209.

"A license is defined as a personal, revocable and unassignable privilege conferred either by writing or parol to do one or more acts on land without possessing any interest therein. It is a distinguishing characteristic of a license that it gives no interest in the land and that it may rest in parol." (17 R. C. L. 564.)

We conclude that this mere verbal, gratuitous, revocable and un-- enforceable license or privilege is not such a title as to make it. capable of being contiguous to real property or affording the legal contact necessary between two otherwise disconnected tracts for homestead purposes.

The judgment is reversed and the cause is remanded with instruc-- tions to confirm the sale of the southeast quarter of the northwest quarter of the section.