## Dougherty's Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner and Hunter, JJ.

*Francis J. Walsh,* and *John M. Holton, Jr.,* for petitioners.

*Thomas J. Clary,* for respondents.

LADNER, J., March 7, 1947.—This is a proceeding under the Act of April 20, 1905, P. L. 239, 12 PS §2571, enabling purchasers at judicial sales of real estate to recover possession of the property purchased. The matter comes before us on petition and answer and from these pleadings the following facts appear.

John Dougherty, decedent, died April 20, 1946, intestate, leaving to survive him as sole heirs, a son, Thomas

Francis Dougherty, who was appointed administrator of his estate, and a daughter, Helen Dougherty McGonagle, who is in possession of the premises in question, viz., 20 West Durham Street, Philadelphia, of which decedent was the owner. On September 21, 1946, pursuant to petition, this court entered its decree authorizing the administrator to sell decedent's real estate for payment of debts, and the property was sold at public sale October 29, 1946, for $4,700. The sale was confirmed November 8, 1946, and settlement was made by the purchasers, Justin V. and Nina I. Smith, who are the petitioners in the proceedings presently before us.

Defendants, or respondents, are the said daughter of decedent, Helen D. McGonagle and her husband, who occupy the property sold. It is admitted they had due notice of all of the recited proceedings and interposed no objections thereto. They refused to comply with the petitioners' demand to vacate. Hence these proceedings.

There is no doubt of our right to entertain these proceedings because the Act of 1905, supra, sec. 1, gives jurisdiction to the court out of which issued "the writ of execution *or order by virtue of which the sale was had.*" See Spiegel's Estate, 21 Lack. 332; Gettels' Petition, 31 York 151, where such jurisdiction was exercised under similar circumstances.

The petition for possession sets forth the jurisdictional facts required by the act, and the purchasers are therefore entitled to a writ of possession unless defendants can show a better title or right to possession. In their answer they pray for a jury trial and petitioners applied for an immediate listing of such trial. This application was refused because it is well settled that a jury trial is not of right and need not be granted where it is evident from the pleadings that there is no controlling or disputed question of fact to be decided:

Lancaster Trust Co. v. Long, 220 Pa. 499, 501 (1908) ; Storey v. Lonabaugh, 247 Pa. 331 (1915).

We find no such question of fact here. Defendants in their answer do not dispute the title of decedent nor of his successor in title, petitioners. They deny, however, the sixth averment of the petition, to the effect that defendants came into possession of the premises as invited guests of decedent, and are not tenants under any lease or agreement. But a mere denial is not enough because by section 5 of the Act of April 20, 1905, P. L. 239, 12 PS §2575, it is made the duty of a respondent who claims a right as a tenant for years paramount as to the purchaser's right to possession to "set forth, particularly, when his term commenced, how long it was to last, what the rent is, and where and how it is to be paid; and he shall attach a copy of the lease, if there be one in his possession, or obtainable by him." In other words, the statute makes plain that a tenant must justify his claim to a right to continue in possession, in language that is clear, unambiguous and positive, with nothing left to inference. All of which is abundantly clear from the authorities, among which are East Penn Realty Co. v. Van Osten, 108 Pa. Superior Ct. 468 (1933), Merchant's National Bank v. Izkovitz, 5 Schuyl. 121 (1937), and Stauffer v. Witherspoon et al., 23 Westmoreland L. J. 5 (1940).

Realizing that something more than denial was necessary, defendants answer further, as follows, "that long prior to decedent's death he went to live with defendants at their home and after residing there for sometime, he prevailed upon defendants to give up their home in which they were then living and to move to the property in question, which he then owned, upon the express understanding and agreement that defendants were to rent the same from him and were to care for him and to maintain the property in good condition as payment for rent and that pursuant to this agreement

defendants thereafter did move into said property as tenants and proceeded to fulfil their obligations. . . . that decedent subsequently moved to his daughter's home and not only permitted defendants to continue in possession as tenants but personally as well as through his son, Thomas F. Dougherty, who later became administrator of his father's estate, made demand on defendants for the payment of rent." The remainder of the paragraph to the effect that after decedent's death they continued as tenants by operation of law is a mere conclusion and cannot be treated as an averment of fact.

The averment of defendants that decedent, personally and by his son, demanded rent does not help them especially as they carefully refrain from averring that they paid the rent alleged to have been demanded.

A tenancy is not to be presumed merely because it is asserted. The averments here are too vague, evasive and indefinite as to time, place, amount of rent, duration of term and other essentials to establish a relationship of landlord and tenant: Wilson Estate, 349 Pa. 646 (1944). In our view, defendants here are at the most mere licensees. The test to determine whether an agreement for the use of real estate is a lease or a license, is whether the contract gives exclusive possession of the premises against the world, including the owner, in which case it is a lease, or whether it merely confers a license to occupy under the owner: Roberts v. Lynn Ice Co., 187 Mass. 402, 73 N. E. 523; R. I. Marine Tran. Co. v. Interstate Nav. Co., 52 R. I. 322, 161 Atl. 108, 109; Smyre v. Kiowa County, 89 Kan. 664. Under defendants' own averments decedent never agreed to give them exclusive possession, nor more than a right to occupy jointly with him his home at his pleasure. The fact that he is averred to have afterward left makes no change in the relationship since no new agreement is averred. They still occupied under decedent and not against him by

any agreement, express or implied, stipulating any definite term. When decedent left his home and defendants continued in possession they were, at the most, tenants by sufferance. Such an occupant differs from a trespasser only in that he entered by permission of the owner. But whether defendants occupy as mere licensees, which we now rule is all they are, or whether they are tenants by sufferance, or even at will, all such relationships terminate by death of either party: The East Jersey Iron Co. v. Wright, 32 N. J. Eq. 248, 253, 35 C. J. 1129, §358, and cases there cited. It follows, therefore, that the purchasers have the right to immediate possession.

The learned counsel for defendants in his brief cites the Act of March 31, 1905, P. L. 87, 68 PS §366, as entitling defendants to 30 days' written notice. If defendants meant to rely on the absence of such notice, they should have averred affirmatively in their answer that no such notice was given, for we cannot assume it. But whether such notice was given or not, that act applies only to suits for possession before a magistrate, alderman or justice of the peace: See section 2, 68 PS §367, and it has been held by Kerr v. Clements et al., 148 Pa. Superior Ct. 378 (1942), and in Second National Bank of Uniontown v. Hustead, 334 Pa. 421 (1939), to be merely a concurrent remedy without application to proceedings pursuant to the Act of 1905 under which these proceedings are conducted and which requires no such notice.

Defendants also aver that petitioners are not entitled to a writ of possession until such time as they have complied with legal requirements for the termination of the existing tenancy as well as with the regulations of the Office of Price Administration as required by law. It is bad pleading to refer to laws of this, or any other jurisdiction without at least including a definite citation thereof, and even worse to refer in general terms

to a Federal administrative board's regulations without setting forth the language of the same. Such regulations, it is well known, change with such kaleidoscopic frequency and are usually so numerous, complicated and involved as to make a search therefor, a burden that cannot justifiably be placed on any court. For this reason alone we would be warranted in ignoring that averment.

However, we gave leave at the argument to counsel to file a supplemental brief, setting forth the regulations on which he relies and the Act of Congress (56 Stat. at L. 23, 765) under which they were adopted. The regulations (sec. 5(*b*) (1)), quoted in his brief, provide in effect, no "tenant" should be removed or evicted except where they refuse to renew a lease, give access to the "landlord", violate obligations of tenancy, commit nuisance, etc., unless on petition of the "landlord", the rent administrator certifies that the "landlord" may pursue his remedies. The regulations provide a period of from three to six months, or less time at discretion of the area rent director before the issuance of such certificate. Section 6(*b*) (2) applies to proceedings where occupancy is desired by a purchaser and provides for a certificate to be issued after similar period where the purchaser desires to evict a "tenant" of the vendor.

We have carefully read and considered both the act of Congress (the foundation of the authority to promulgate regulations) and the regulations quoted. From the purposes recited in the preamble of the act, and the language of the regulations, it is too clear for argument that they were meant to cover only cases of a simonpure relationship of landlord and tenant established by virtue of a lease, written or oral, and that the word "tenant", as there used, is synomomous with "lessee".

We have already found that no such relationship exists here. Defendants are, at the most, mere licen-

sees. Indeed, their learned counsel claims no more for them than that they are "tenants by sufferance". But even a tenant by sufferance would not be within the protection of the regulations because such relationship is not that of lessor and lessee. The owner is not a landlord, or even so called. The word "tenant" in such an estate is used in the ancient sense of anyone holding an estate in land, cf. "tenants in common"; "tenants by entireties"; "tenant by coparcenary"; "tenant by courtesy", etc. A "tenancy by the sufferance" is possibly the lowest grade of an estate in land. Such a tenant is distinguished from a mere trespasser or a squatter only by the fact that he originally entered by permission of the owner. He remains in possession merely because the owner neglects to oust him. But he acquires no rights, no term, only a naked possession due to the neglect to disturb him, and the landowner or his successor in title is entitled to have possession at any time and without notice: 35 C. J. 1134, §370.

The learned counsel has made a valiant endeavor to keep defendants in possession largely, we suspect, because of the difficulty of finding another home. We sympathize with their plight but, after all, they have had undisturbed possession for more than 10 months since decedent's death and we have a duty to perform to the purchasers who no doubt need the home themselves. They have been kept out of possession of a property they bought and paid for, for nearly three months. Nor ought we to shirk the responsibility of firmly upholding the rights of purchasers at judicial sales ordered by this court. Otherwise, distributees of estates may suffer loss due to prospective bidders being deterred from bidding by a fear of difficulty in gaining possession of the property purchased.

And now, the writ of possession prayed for is granted, and the clerk is directed to issue the same forthwith.